B. F. STURTEVANT CO. v. INTERNATIONAL BANANA FOOD CO.

CONTRACTS—CONSTRUCTION—OFFER AND ACCEPTANCE—RECOUPMENT —BREACH OF WARRANTY.

In an action on a contract to install a banana dryer, defendant claiming recoupment for failure of the conveying machinery to conform to plaintiff's warranty, *held*, that the correspondence should be construed to warrant the capacity of the conveyor as finally included in the agreement, although it was not included in the original warranty.

Error to Berrien; Bridgman, J. Submitted January 9, 1914. (Docket No. 41.) Decided March 27, 1914.

Assumpsit by B. F. Sturtevant Company against the International Banana Food Company for the price of machinery, etc. Judgment for defendant. Plaintiff brings error. Affirmed.

*Cady & Andrews,* for appellant.

*Humphrey S. Gray,* for appellee.

Moore, J. Defendant in 1908, and prior thereto, was drying bananas in Benton Harbor, Mich., and in Mexico. The company, during the latter part of the year 1908, decided to erect, at New Orleans, a plant capable of drying 60,000 pounds of bananas in 24 hours.

The following correspondence was had between the company and the plaintiff in this case:

"Chicago, January 21, '09.
"International Banana Food Co.,
    "Chicago, Ill.
*"Gentlemen:*
"We inclose herewith blueprint of drawing C633A showing arrangement of banana dryer for your plant at New Orleans, La. We propose to furnish the fan, engine, heater coils, galvanized iron connections from fan to kiln, the galvanized iron vent duct of length shown on drawing. We will deliver above apparatus f. o. b. cars, New Orleans, and furnish a man to superintend the erection of apparatus. The above apparatus to be built in accordance with the following specifications:

"Fan: We will furnish one No. 15 Sturtevant Multivane fan to be of 7/8 housing type and to be built according to dimensions and data as hereinafter stated.

"Engine: We will furnish one 10x8 VS5 type engine. This engine is built for a working pressure of 100 lbs. steam pressure, furnished with cylinder lubricator, gravity lubricator, and full set of wrenches. Engine is furnished with steel sub-base to be direct connected to side plate of the fan. Engine to be of the inclosed type and furnished with throttling governor. The inclosed bulletin No. 125 gives you a com-

plete description of this engine with the exception of the forced lubrication which is now done away with on this type of engine.

"Heater: We will furnish heater coils to be built of 10, 6x7 feet London type sections arranged back to back to be 20 rows in depth and containing 9,700 actual linear feet of 1-inch pipe exclusive of elbows and bases. Coils are to be thoroughly jacketed with No. 17 gauge steel plate and extension of housing to be furnished from coils to fan as shown on drawing.

"Galv. Iron Work: We will furnish the galvanized iron connections from fan outlet to dry kiln and from the vent opening in kiln to a height as shown on drawing. Galvanized iron is to be of the Apollo Brand or equal and is to be built of No. 22 gauge iron. Volume dampers are to be provided for ducts as indicated on drawing. All the above galvanized iron work is to be erected by the owners.

"Conveying Apparatus: Conveying apparatus is to be furnished by the owners and is to consist of 5 canvas belt conveyors 6 feet wide by 50 feet in length. The conveyors are to be operated by a chain drive in accordance with the design as shown on drawing. We have estimated the cost of the conveying apparatus and wish to take this matter up with you in person.

"To be Furnished by Owners: Owners are to furnish the dry kiln housing, foundation for the apparatus, steam connections to the engine and heater coils, conveyor, and is to furnish labor for installing fan, engine and coils. Conveying apparatus is to be installed by the owner.

"Price and Terms: Price for the above specified apparatus to be twenty-eight hundred fifty-six dollars f. o. b. our works, freight allowed to New Orleans, terms payable 50 per cent. upon delivery, 25 per cent. thirty days later, and the remainder thirty days thereafter.

"Material to be Dried: Material to be dried is banana pulp sliced and fed into the dry kiln containing 73 per cent. moisture. The apparatus is to be of ample capacity to remove all but 7 per cent. of the moisture contained in the banana pulp. The above apparatus is to have a capacity to dry 60,000 lbs. of banana pulp in 24 hours' time.

"Guarantee: We guarantee the above specified apparatus to be of ample capacity to remove the moisture from the banana pulp as named above, providing the heater and engine are supplied with sufficient steam at a steam pressure of 5 lbs. on the coils and the apparatus operated in accordance with our instructions. We further guarantee the fan, engine, and coils to be free from all defects in material and workmanship, said guaranty to remain in effect for a period of one year from date of completion of erection of the apparatus.

"Respectfully submitted,
"B. F. STURTEVANT CO.,
"By P. H. DANIELS,
"Chicago House."

"CHICAGO, Jan. 23d, 1909.
"MR. J. ELLSWORTH GRIFFIN,
"St. Charles Hotel,
"New Orleans, La.
"*Dear Sir:*

"Under separate cover we are sending you proposition and plan showing arrangement of banana dryer for International Banana Food Co.

"The writer called at your office last Wednesday and learned that you would probably be in New Orleans for some time and he thought the plan should be sent on to you and perhaps you could secure figures on the conveyor as shown on our plan. The writer has estimated the cost of the conveyor but we did not secure any prices on this work because the conveyor companies want several days to get out figures and we did not care to delay getting this proposition to you. We do not manufacture any of the conveying apparatus and for this reason we thought you could buy this apparatus direct because if we handled this part of the work it would be necessary for us to add about 10 per cent. profit. We have figured the conveyor belt to travel 2 feet a minute and this belt is to be driven by a chain and sprocket wheels as indicated on drawing. The pulleys driving the conveyors are 10 inches in diameter, therefore they could make less than one revolution a minute when driving the conveyor belt 2 feet a minute. The conveyor belt should be of No. 18 oz. canvas and the 2-inch idlers

should be built of wood for feeding the banana bulk on to the conveyor. We have shown a plate attached to a bell crank which should make one revolution each time the chain moves forward, that is if the belt conveyor is fed 1 inch the bell crank should make one complete revolution.

"We trust that the arrangement of the dry kiln and apparatus meets with your approval and we hope that you will favor us with your order for the apparatus.

"Awaiting your further commands, we remain,
"Yours truly,
"B. F. STURTEVANT CO.,
"By P. H. DANIELS,
"Chicago House."

"CHICAGO, Feb. 1st '09.
"MR. M. J. ELLSWORTH GRIFFIN,
"St. Charles Hotel,
"New Orleans, La.

*"Dear Sir:*

"Your Chicago office today requested us to give you our bid on conveying apparatus for banana dryer in accordance with our drawing C633A.

"We hereby propose to furnish conveying apparatus as shown on above drawing consisting of 10-inch roller pulleys provided with sprockets on both ends, chain drive, worm gear drive, pedestal shaft bearings, 18 oz. canvas belts, 2-inch idlers, belt crank and gears, one 5 H. P. 220 volt, direct current motor wound for a speed of 675 R. P. M., starting box and belt. All the above apparatus makes the conveying apparatus within the dry kiln complete, which we will furnish and erect in the dry kiln housing furnished by you for the sum of $924.00.

"We figure that the conveying apparatus will require about a 3 H. P. motor, but we furnish a 5 H. P. slow speed motor so that it will be of ample capacity to allow you to drive any small roller conveyors feeding the material to the kiln and removing the same after it is dried.

"Yours very truly,
"B. F. STURTEVANT CO.,
"By P. H. DANIELS,
"Chicago House."

"CHICAGO, Feb. 20, 1909.
"INTERNATIONAL BANANA FOOD COMPANY,
"Corn Exchange National Bank Bldg.,
"Chicago.

*"Gentlemen:*

"Referring to our proposition of January 21st, 1909, for banana dryer, beg to advise that we will revise our drawing C633A so that the overall height of the dry kiln housing is 10 feet no inches. The revision made in the drawing will not increase the price of the conveying apparatus and our guarantee will remain the same for drying 60,000 lbs. raw material in 24 hours.

"We will await your further advices before revising our drawings, and beg to remain,
"Very truly yours,
"B. F. STURTEVANT CO.,
"By P. H. DANIELS,
"Chicago House."

"CHICAGO, ILL., March 1st, 1909.
"B. F. STURTEVANT CO.,
"261 So. Clinton St.,
"Chicago.

*"Gentlemen:*

"In accordance with your bids of January 21st, 23rd, February 1st, and 20th, you will please enter our order for banana dryer and conveyor as per plans and specifications submitted, with the understanding that the height of dryer kiln housing shall not exceed 10 ft., and that a 5 H. P. alternating current motor be substituted in place of direct current motor; the entire equipment to be delivered and erected by you at our plant in New Orleans, delivery to be made within thirty days.

"We refer you to the Union Trust Company, Chicago, the State Savings Bank, Benton Harbor, Michigan. Respectfully,
"J. E. GRIFFIN, President."

As a result of this correspondence, the B. F. Sturtevant Company installed the plant. The defendant claimed it did not do the work as it was agreed it should do, and declined to pay for it. This suit was brought to recover the purchase price, $3,937.50, and

interest.  The defendant pleaded the general issue and gave notice of recoupment.  The jury returned a verdict in favor of defendant for $972.85.  The case is brought here by writ of error.

There are a great many assignments of error, but the pivotal question in the case is whether the plaintiff warranted the equipment to be capable of turning out 60,000 pounds of dried bananas every 24 hours, or whether the warranty applied only to the engine, heater, and fan, and not to the conveying apparatus.

The drawings for the plant were made by the plaintiff.  The language employed under the heads "Material to be Dried," and "Guarantee," in the letter of January 21, 1909, is not ambiguous.  It is true that the drawing was revised, but after it was revised it is stated in the letter of February 20, 1909:

"The revision made in the drawing will not increase the price of the conveying apparatus, and our guaranty will remain the same for drying 60,000 pounds of raw material in 24 hours."

It will be noticed this letter was written after the plaintiff had proposed to furnish the conveying apparatus, as well as the other machinery.  We think this correspondence is not ambiguous, but made it the duty of the plaintiff to erect a plant that would turn out the product agreed upon, or, in case of failure to do so, to respond in damages.

Having reached this conclusion, it is not necessary to discuss in detail the various assignments of error, for an examination of the record satisfies us that, if any one has cause to complain of the charge as to the measure of damages the trial court gave to the jury, it is not the plaintiff.

Judgment is affirmed.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.